UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   1:10-cr-380 |
| Plaintiff, | |
| v. | Hon. Paul L. Maloney<br>Chief U.S. District Judge |
| JEREMY R. SHEETS, | |
| Defendant.                    / | |

## PLEA AGREEMENT

This constitutes the plea agreement between Jeremy R. Sheets ("Defendant") and the United States of America ("the United States" or "Government"), pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). The terms of the agreement are as follows:

1.   **The Defendant Agrees to Plead Guilty.**   The Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to a one-count Information charging the Defendant with defrauding the federal E-Rate Program in violation of Title 18, United States Code, Section 1343, a Class C felony.

2.   **The Defendant Understands the Crime of Wire Fraud.**   In order for the Defendant to be guilty of violating Title 18, United States Code, Section 1343, the following must be true:

   a.   the Defendant knowingly devised a scheme to defraud;

   b.   the Defendant executed the scheme to defraud;

c. the scheme involved materially false and fraudulent pretenses, representations, and promises;

d. the Defendant caused to be transmitted by means of wire communication in interstate commerce writings, namely electronic mail messages, for the purpose of executing such scheme to defraud; and

e. the Defendant acted with an intent to deprive the victim of money and property.

The Defendant is pleading guilty because he is guilty of the charge described above.

3. The Defendant Understands the Penalty for Committing Wire Fraud. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is the following: 20 years' imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.00. The Defendant agrees to pay the special assessment at or before the time of sentencing.

4. Factual Basis of Guilt and Relevant Conduct. The Defendant and the United States agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

Scheme to Defraud the E-Rate Program

a. Defendant and Defendant's company ("Company A") provide Internet access and related technology services, and their customers include schools that participate in the federal E-Rate Program. The Federal government

2

created the E-Rate Program to provide subsidies to schools and libraries for use in obtaining Internet access and other telecommunications services. The E-Rate Program is administered by the Schools and Libraries Division of the Universal Service Administrative Company ("USAC"). Schools participating in the E-Rate Program, as well as the vendors supplying Internet access and other telecommunications services to schools receiving E-Rate Program funding, must follow the rules of the E-Rate program.

      b.      The E-Rate Program requires that all applicant schools pay a portion of eligible expenses in order to qualify for funding under the program. Defendant attempted to circumvent this requirement by promising prospective customers that they would not have to pay anything to obtain goods and services under the E-Rate Program. For example, on or about July 26, 2004, Defendant and Company A made a "donation" to one school district ("School District A") in the amount of approximately $20,458.35, intending to re-pay that school district for its share of E-Rate Program expenses. This was done to induce School District A to contract with Defendant and Company A. Defendant additionally promised a second school district ("School District B") that it would not have to pay anything to obtain goods and services under the E-Rate Program. On four occasions between 2004 and 2007, Defendant exchanged checks with School District B in order to create the false appearance that School District B had paid its portion of expenses under the program. This was done to induce School District B to contract with Defendant and Company A.

c. The E-Rate Program provides funding for a limited number of goods and services; namely, those goods and services related to Internet connectivity and access. In addition, funding applications must fully and accurately set forth the goods and services for which funding is sought. Defendant and Company A sought to circumvent this requirement of the E-Rate Program by utilizing E-Rate Program funding for non-eligible and/or undisclosed goods and services. Regarding School District B, beginning in the 2004-05 school year, through and including the 2006-07 school year, Defendant and Company A acted in concert with an employee of School District B ("Individual A"), whose duties included preparing applications for E-Rate Program funds, to order goods and services which were not otherwise eligible for funding and/or not disclosed to the E-Rate Program, and paid for such goods and services out of overcharges to the E-Rate Program. This was done to induce School District B to contract with Defendant and Company A.

d. Through Defendant's conduct as described above in Paragraph 4(b) & (c), Defendant caused the E-Rate Program to suffer a loss of between $30,000 and $70,000.

e. For the purpose of executing the scheme to defraud described above, Defendant intentionally transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings which included material misrepresentations and the concealment of material facts. Among other such transmissions, on or about August 9, 2006, Defendant caused an electronic mail message to be transmitted from a computer in Michigan to a

4

computer server belonging to USAC, the entity which administers the E-Rate Program, in New Jersey. The electronic mail message was sent in response to an audit then being conducted by USAC which sought details concerning the E-Rate services contract between Company A and School District B for the 2006-07 school year. The responsive electronic message caused to be sent by Defendant attached an invoice from Company A to School District B. The invoice in question falsely stated that School District B was paying for its share of E-Rate Program expenses for the school year in question. In addition, the invoice concealed the material fact that a portion of the invoiced funds were utilized for goods and services which were not eligible for funding and/or not disclosed to the E-Rate Program.

f.   During the time in which Company A was providing E-Rate services to schools receiving E-Rate Program funds, Defendant gave Individual A an illegal gratuity in the form of a used wide screen television and entertainment system. The gratuity was related to overcharges to the E-Rate Program for Internet services referenced above in Paragraph 4(c).

### Obstruction

g.   On or about December 5, 2007, Defendant and Company A were each served with a grand jury subpoena requiring the production of certain records, documents, and other objects to the federal grand jury sitting in Grand Rapids, Michigan on January 8, 2008. After receiving service of the subpoenas, Defendant destroyed and caused to be destroyed records relating to the conduct

described above in Paragraph 4(b)-(f) intending to impair the records' availability for use in an official proceeding.

h.   Following the service of the grand jury subpoenas referenced above in Paragraph 4(g), Defendant instructed an employee of Company A ("Individual B") to perform a search of Individual B's work computer to determine whether it contained records, documents, or other objects responsive to the subpoenas. Individual B performed the requested search, and uncovered dozens of responsive records. Defendant then instructed Individual B to delete the responsive records from his work computer, and Individual B did so. On or about April 25, 2008, Individual B was served personally with a grand jury subpoena. The subpoena called for substantially the same records as encompassed by the subpoenas previously served upon Defendant and Company A on December 5, 2007. Individual B informed Defendant that the electronic mail messages that Individual B received on Individual B's work computer were copied to certain computers located at Individual B's residence, and that therefore copies of the records previously destroyed by Individual B at Defendant's instruction were likely located on such additional computers. Defendant then instructed Individual B to delete those records and remove the hard drives from the computers located at Individual B's residence, and give them to Defendant. Defendant in turn promised to give Individual B new hard drives in return. Individual B followed Defendant's instructions.

i.   On or about March 21, 2008, Individual A was served personally with a grand jury subpoena calling for his testimony before the federal grand jury

sitting in Grand Rapids, Michigan on May 6, 2008. On or about March 27, 2008, Defendant met in person with Individual A to discuss Individual A's response to Individual A's grand jury subpoena. Defendant instructed Individual A to testify falsely before the grand jury when questioned about the illegal gratuity discussed above in Paragraph 4(f) by stating that Individual A had not received the used wide screen television and entertainment system in question from Defendant as a gift, but had purchased the items from Defendant and paid cash for the goods.

  j. Acts in furtherance of the instant criminal charge were carried out within the Western District of Michigan, Southern Division.

  5. Acceptance of Responsibility. The United States agrees not to oppose the Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under § 3E1.1(a) of the Sentencing Guidelines. However, the United States reserves the right to object to Defendant's request if it subsequently learns of conduct by the Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government states that the Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying it of his intention to enter a guilty plea, thereby permitting the Government to avoid preparing for trial, and hereby moves the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater.

  6. Restitution and Disgorgement of Revenue. The Defendant understands that he will be required to pay full restitution to the victim of the offense, USAC, in the

amount of $115,534.00, out of Defendant's personal funds. The Defendant further agrees to make restitution within thirty days of the signing of this agreement.

7. <u>Non-Prosecution</u>. The United States agrees not to bring additional criminal charges against the Defendant in the Western District of Michigan arising out of any act or offense that was undertaken in furtherance of a scheme to defraud the E-Rate Program or undertaken in connection with any investigation of such a scheme, provided that the conduct is disclosed to the Government by the Defendant or his attorney prior to the date of this agreement. The Defendant shall remain subject to prosecution for any criminal activity he has failed to disclose to the Government prior to the date of the agreement. This promise of non-prosecution shall not include crimes of violence, if any, or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). In addition, pursuant to a non-prosecution and cooperation agreement entered into between the United States and Company A, the United States will not bring criminal charges against Company A for any act or offense committed before the date of this agreement that arose out of Company A's participation in the E-Rate Program in the Western District of Michigan or that was undertaken in connection with this investigation.

8. <u>The Sentencing Guidelines</u>. The Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing the Defendant. The Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. The Defendant understands that the Defendant and the Defendant's attorney will have the opportunity

to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. The Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this agreement. The Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

9. <u>The Parties Jointly Agree to the Following</u>: Defendant and the United States agree and stipulate to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1.(a)(1)] |
| Specific Offense Characteristics – | | |
| Loss of Between $30,000 and $70,000: | +6 | [U.S.S.G. § 2B1.1.(b)(1)(D)] |
| Aggravating Role | +2 | [U.S.S.G. § 3B1.1.(c)] |
| Obstruction | +2 | [U.S.S.G. § 3C1.1] |
| Adjustments – | | |
| Acceptance of Responsibility: | -2 | [U.S.S.G. § 3E1.1.(a)] |
| Timely Notification of Plea | -1 | [U.S.S.G. § 3E1.1.(b)] |
| <u>Adjusted Offense Level</u> | <u>14</u> | |

The United States agrees to recommend that the appropriate disposition of this case is a period of imprisonment under the Guidelines within the range applicable to an

9

Offense Level of 14. The parties agree that no additional specific offense characteristics, adjustments, or departures apply.

10. There is no agreement as to the Defendant's criminal history or criminal history category.

11. The Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both the Defendant and the United States are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence. The Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, the Defendant cannot, for that reason alone, withdraw his guilty plea.

12. <u>Waiver of Constitutional Rights.</u> By pleading guilty, the Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of the Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, the Defendant would have had the following rights:

> a. The right to the assistance of counsel, including, if the Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent the Defendant.

    b.    The right to be presumed innocent and to have the burden of proof placed on the Government to prove the Defendant guilty beyond a reasonable doubt.

    c.    The right to confront and cross-examine witnesses against the Defendant.

    d.    The right, if the Defendant wished, to testify on the Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

    e.    The right not to be compelled to testify, and, if the Defendant chose not to testify or present evidence, to have that choice not be used against the Defendant.

By pleading guilty, the Defendant also gives up any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

    13.    <u>Waiver of Appeal and Collateral Attack</u>.  The Defendant understands that the law affords the Defendant the right to appeal the sentence imposed. Acknowledging this, the Defendant knowingly waives the right to appeal the sentence as determined by the Court at sentencing, and the manner in which the sentence was determined on the grounds set forth in Title 18, United States Code, Section 3742. Nevertheless, as a matter of law, the Defendant retains the right to appeal a sentence that exceeds the statutory maximum or is based upon an unconstitutional factor, such as race, religion, national origin, or gender.  The Defendant acknowledges that this waiver is in exchange for the substantial concessions made by the United States in this

11

plea agreement, including those enumerated in Paragraphs 7 and 9 of this agreement. The Defendant also waives the right to challenge such a sentence and the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (except a challenge that goes to the validity of this waiver, such as a claim that the waiver was involuntary or the product of ineffective assistance of counsel). This agreement does not affect in any way the right of the United States to appeal the sentence imposed by the Court.

14. Hyde Waiver. The Defendant acknowledges, by his voluntary admission of guilt, that the position of the United States in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

15. The Court is not a Party to this Agreement. The Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the United States or the parties regarding the sentence to be imposed. The Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, the Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. The Defendant understands that no one – not the prosecutor, the Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence the Defendant will receive, except that it will be within the statutory maximum.

16. This Agreement is Limited to the Parties. This agreement is limited to the United States Department of Justice, and cannot bind any other federal, state, or

12

local prosecuting, administrative, or regulatory authority. This agreement applies only to crimes committed by the Defendant.

17. <u>Consequences of Breach.</u> If the Defendant breaches any provision of this agreement, whether before or after sentencing, including but not limited to any of the provisions set forth above in Paragraph 6, the United States shall have the right to terminate this agreement, or deny any or all benefits to which the Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, the Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. The Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

18. <u>This is the Complete Agreement.</u> This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. This plea agreement, and the non-prosecution and cooperation agreement entered into with Company A, constitute the entire agreement between the United States and the Defendant concerning the disposition of the criminal charge in this case. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

12/8/2010
Date

JASON C. TURNER
Trial Attorney, Antitrust Division
U.S. Department of Justice

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Date

JEREMY R. SHEETS
Defendant

I am Jeremy Sheets's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

12.6.10
Date

MARTIN E. CRANDALL
Attorney for Defendant

14